Jervon L. **HERBIN**, Appellant,

v.

Janet C. **HOEFFEL**, et al., **Appellees.**

Nos. 97–CV–1655, 98–CV–641.

District of Columbia Court of Appeals.

Submitted Nov. 16, 1998.
Decided April 8, 1999.
As Amended May 5, 1999.

Jervon L. Herbin, pro se.

Blair G. Brown, with whom Hillary A. Davidson, Washington, DC, was on the brief, for appellee.

Before SCHWELB, FARRELL and RUIZ, Associate Judges.

RUIZ, Associate Judge:

In this consolidated appeal, Jervon Herbin challenges first, the dismissal of his complaint alleging that appellee Janet Hoeffel willfully destroyed documents which Herbin asserted that he needed for his defense in a Virginia criminal case. Herbin also opposes the dismissal of a second complaint he filed against Hoeffel and the members of the board of the D.C. Public Defender Service (PDS) for his apparent failure to properly serve any of the named defendants within the deadline fixed by the court. In her motion to dismiss the first complaint, Hoeffel argued that Herbin had failed to state a claim upon which relief could be granted. However, because Hoeffel presented facts not pled on the face of the complaint in her motion, and because the trial court apparently relied on those facts in dismissing the complaint without giving Herbin an opportunity to respond, we hold that the trial court failed to comply with Rule 12(b)(6), and reverse and remand the first case for further proceedings consistent with this opinion. We also reverse and remand the dismissal of Herbin's second complaint for failure to effect service as it was the trial court's obligation, pursuant to Super. Ct. Civ. R. 54–II, to serve process on behalf of Herbin, who was proceeding *in forma pauperis*.

I.

*Factual background.*

97–CV–1655

Herbin was a client of PDS where Hoeffel worked as an attorney.[1] Herbin was charged with several offenses in the Circuit Court of Virginia, Loudoun County, and informed his Virginia counsel that he had spent

some time in various psychiatric institutes in the past and that he had given those records to Hoeffel for safe-keeping. Although Herbin's attorney attempted to obtain these alleged records from Hoeffel, she informed him that she did not have the documents and did not wish to be contacted anymore regarding the matter.

Herbin then filed a complaint on July 9, 1996, alleging that Hoeffel "willfully, deliberately, and maliciously withheld, or disguarded [sic] and or destroyed documents which I need to present as evidence in an upcoming case." On November 1, 1996, the Superior Court stayed the action, pending resolution of Herbin's criminal case in Virginia, noting that "there are remedies available to plaintiff in the criminal proceeding to recover his file and its contents from his former attorney." In June 1997, Herbin was convicted of the charged offenses and sentenced to 92 years in prison. Following his sentencing in Virginia, the stay in the underlying action in Superior Court was lifted. After a series of motions from both parties, Hoeffel eventually filed a motion to dismiss for failure to state a claim under Super. Ct. Civ. R. 12(b)(6), arguing that Herbin's allegations were too vague, and that he had failed to plead any causal connection between Hoeffel's alleged wrongful withholding of the documents and his conviction in Virginia. The trial court dismissed Herbin's complaint with prejudice in a one-page order that did not set out the reasons for dismissal.

98–CV–641

In a second complaint, filed June 3, 1997, Herbin again brought suit against Hoeffel, this time also naming the board members of PDS and alleging that Hoeffel had contacted law enforcement officials in and for the County of Louden, Virgina and conveyed information which enabled Virginia prosecutors to locate his whereabouts and serve him with a search warrant. In doing so, Herbin contended, Hoeffel breached a duty of confidence owed to him by her as his attorney,

---

1. Although Herbin alleges that he has been represented by Hoeffel and PDS since he was 13 years old, PDS claims that, according to its records, Herbin has only been represented by the agency once, by an attorney other than Hoeffel, in a matter which ended with appellant's sentencing on October 18, 1990.

and the board members of PDS had failed to prevent such action by Hoeffel.

On July 29, 1997, Herbin requested an extension of time to serve the complaint on the appellees. In his request, Herbin, who was proceeding *in forma pauperis,* also asked that process be served on his behalf by the U.S. Marshals Service. The trial court gave Herbin until September 29, 1997 to serve process on appellees with alias summonses, but denied Herbin's request that the court order service of process.

Despite the extension of time, Herbin again failed to properly serve appellees and in an order dated October 7, 1997, the court *sua sponte* dismissed the complaint without prejudice pursuant to Super. Ct. Civ. R. 4(m). Citing a delay on the part of a Superior Court clerk in stamping the seal of the court on his complaint and a failure by the clerk's office to give Herbin's hired server the correct papers, Herbin asked the court to vacate the dismissal order, and again asked for help from the U.S. Marshals Service in serving process on the appellees. Upon consideration of Herbin's motion, the court vacated the dismissal order and gave Herbin until January 30, 1997 to serve process upon Hoeffel and PDS, but again denied his request to have a U.S. Marshal serve process on his behalf. On January 28, 1997, Herbin's brother attempted to serve the complaint and summons on appellees, but improperly left the papers with PDS' receptionist, in contravention of Super. Ct. Civ. R. 4(e). The trial court then granted appellees' motion to dismiss Herbin's suit with prejudice pursuant to Super. Ct. Civ. R. 41(b) on February 23, 1998. In its order, the court stated that Herbin had failed to properly serve Hoeffel and the other named defendants "despite numerous extensions within which to do so."

In a footnote, the court also noted that even though the other named defendants (the PDS board of directors) had not been sued in the first action, nevertheless, alternatively it could have dismissed this case on *res judicata* grounds.

## II.

### *The 12(b)(6) dismissal.*

■ Under Super. Ct. Civ. R. 8(a) and (e), a plaintiff need only plead sufficient facts such that the complaint "fairly puts the defendant on notice of the claim against him." *Scott v. District of Columbia,* 493 A.2d 319, 323 (D.C.1985). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint and "admits all facts well pleaded but contests the plaintiff's right to any recovery based on those facts." *American Ins. Co. v. Smith,* 472 A.2d 872, 874 (D.C.1984) (citation omitted). Accordingly, a defendant raising a 12(b)(6) defense cannot assert any facts which do not appear on the face of the complaint itself. *See id.* If any such matters are presented to the court, it must treat the motion as one for summary judgment as provided in Super. Ct. Civ. R. 56. *See id.*[2]

■ In her motion to dismiss, Hoeffel relied on facts which did not appear on the face of Herbin's complaint, asserting that Herbin did not argue his innocence during his criminal trial,[3] making the documents in question irrelevant to Herbin's defense such that the loss or destruction of the documents could not have proximately caused his conviction. If true, Hoeffel's representation would appear to preclude Herbin's claim. But for the trial court to have relied on those facts outside the complaint, without notifying Herbin that it intended to do so and giving him an

---

**2.** Of course, the converse of this rule is not necessarily true as a plaintiff challenged by a 12(b)(6) motion will not be so limited to the facts pled on the face of the complaint when the issue is whether the complaint gave adequate notice to the defendant. *See, e.g., Industrial Bank of Wash. v. Allied Consulting Servs.,* 571 A.2d 1166, 1167 (D.C.1990). *See also Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359, 363 (D.C.1984) (noting " 'accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief' ") (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**3.** Herbin's defense in the Virginia criminal trial was that he did not remember the events and that his lack of memory reflected on the absence of required intent. It appears that one purpose for which the documents theoretically could have been useful, an insanity defense, was precluded by the Virginia trial court.

opportunity to present additional material relevant to a summary judgment motion, is reversible error.[4] *See Kitt v. Pathmakers, Inc.*, 672 A.2d 76, 79 (D.C.1996).

Although it is unclear from the one-page order dismissing Herbin's complaint exactly on what ground the trial judge granted the motion to dismiss, it is apparent that the court must have relied on facts outside the complaint because we conclude that Herbin's complaint, though short and broadly worded, nevertheless asserted facts sufficient to give Hoeffel notice of the subject matter of his suit. We cannot say that on the face of this complaint, " 'resolving all doubts in favor of the plaintiff, that the plaintiff is not entitled to any relief,' " *Kitt, supra*, 672 A.2d at 80 n. 6 (quoting *Tele–Communications of Key West v. United States*, 244 U.S.App. D.C. 335, 340, 757 F.2d 1330, 1335 (1985)), particularly in light of our recent decision in *Holmes v. Amerex Rent–A–Car*, 710 A.2d 846 (D.C. 1998). In *Holmes*, this court for the first time recognized the tort of negligent or reckless spoliation of evidence. *See id.* at 847. In order to prevail on this claim, a plaintiff

> must show, on the basis of reasonable inferences derived from both existing and spoliated evidence, that (1) the plaintiff's ability to prevail in the underlying lawsuit was significantly impaired due to the absence of the spoliated evidence; and (2) there had been a significant possibility of success in the underlying claim against the third party.

*Id.* Thus, Herbin's complaint was not subject to dismissal.[5]

Upon remand of this case, Herbin will be required to submit evidence sufficient to demonstrate to the trial court that there is a genuine issue of fact material to a spoliation claim such that Hoeffel will not be entitled to a judgment as a matter of law should she again choose to move for summary judgment. *See Williams v. Gerstenfeld*, 514 A.2d 1172, 1176 (D.C.1986).[6]

### *The 41(b) dismissal.*

■ While we will not disturb a trial court's grant of a motion to dismiss for failure to effect timely service of process absent an abuse of discretion, we have also consistently held that a "dismissal with prejudice pursuant to Super. Ct. Civ. R. 41(b) should be sparingly exercised." *Wilds v. Graham*, 560 A.2d 546, 547 (D.C.1989); *see also Cameron v. Washington Metro. Area Transit Auth.*, 649 A.2d 291, 294 (D.C.1995). Upon review of the record, we conclude that the trial court abused its discretion in dismissing appellant's complaint.

■ Although Herbin asked the trial court for help from the court in serving process on the named defendants in his complaint on at least two separate occasions, the trial court denied his requests after concluding that he had been unable to demonstrate to the court's satisfaction that he was unable to effect proper service. In doing so, the trial court did not consider that, as soon as it granted Herbin's application to proceed *in forma pauperis*, the court was obligated to follow Super. Ct. Civ. R. 54–II which explicitly states: "[t]he officers of the Court *shall issue and serve all process*, and perform all duties in [*in forma pauperis* ] cases." Super. Ct. Civ. R. 54–II (emphasis added).[7] Thus, once Herbin requested the court's help and identified the defendants, it became incum-

---

**4.** Herbin alleges that he was never served with the motion to dismiss, although there was a representation in the record by Hoeffel's attorney that Herbin had been advised by telephone of the motion and that he did not agree with it. Even if Herbin had been served with Hoeffel's motion, however, and Herbin therefore had time to respond, he still would not have been on notice that he had to respond to it as if it were a Rule 56 motion without first being advised by the trial court that it intended to treat it as such. *See Bernay v. Sales*, 435 A.2d 398, 402 n. 4 (D.C. 1981).

**5.** There has been no argument to this court that our holding in *Holmes* should not be applied in evaluating the sufficiency of Herbin's complaint. We leave any related question of retroactive application of *Holmes* for reservation by the trial court in the first instance.

**6.** Because we are remanding the case to the trial court, we need not address appellant's claim that the trial court's dismissal of his complaint also was improper because he was not served with a copy of Hoeffel's motion to dismiss prior to the judge's ruling. See note 4, *supra*.

**7.** *See also* Super. Ct. Civ. R. 4(c)(2) ("At the request of the plaintiff ..., the Court may direct that service be effected by a United States marshal, deputy United States marshal, or other per-

bent upon the court to issue and have process served on Herbin's behalf without requiring Herbin to first show that he was unable to do so himself. Rule 54–II is consistent with federal practice, as set forth in Fed.R.Civ.P. 4(c)(2)[8] and 28 U.S.C. § 1915(d),[9] which together

> stand for the proposition that when a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.

*Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); *see also Lindsey v. United States R.R. Retirement Bd.*, 101 F.3d 444, 447 (5th Cir.1996); *Graham v. Satkoski*, 51 F.3d 710, 712 (7th Cir.1995); *Dumaguin v. Secretary of Health & Human Servs.*, 307 U.S.App. D.C. 351, 354, 28 F.3d 1218, 1221 (1994); *Welch v. Folsom*, 925 F.2d 666, 670 (3d Cir. 1991).[10]

■ We conclude that the trial court abused its discretion in dismissing Herbin's complaint with prejudice. We do so for two combined reasons. First, while Super. Ct. Civ. R. 41(b) authorizes the trial court to dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court," the trial court's dismissal was premised on Herbin's failure to serve process on the appellees without apprehending the trial court's own deficiency in failing to perform its obligations under Super. Ct. Civ. R. 54–II. The record shows that Herbin explicitly requested the court to have a U.S. Marshal serve process on his behalf on two separate occasions, and supplied copies of alias summonses to the court with correct addresses for the appellees. Second, even after being denied his proper request for assistance in serving his complaint, Herbin, who was then incarcerated, made at least two (albeit unsuccessful) attempts to have process served, first by a hired server and then by his brother. Particularly in light of these good faith efforts, it was an abuse of discretion to dismiss Herbin's complaint for failure to effect service within the time prescribed in Rule 4(m) when that failure is attributable to the trial court's nonperformance of the court's obligations with respect to plaintiffs proceeding *in forma pauperis*, and beyond the defendant's control. *See Johnson v. United States*, 398 A.2d 354, 367 (D.C.1979).

■ Our holding is consistent with the decision in *Lindsey, supra*, where the Fifth Circuit held that the district court's failure to follow Fed.R.Civ.P. 4(c)(2) and 28 U.S.C. § 1915(c) and appoint someone to serve process on the plaintiff's behalf was an abuse of discretion, constituting "good cause" sufficient to vacate the district court's dismissal of the complaint. *Id.* at 448. In *Lindsey,*

---

son or officer specially appointed by the Court for that purpose.").

**8.** Fed.R.Civ.P. 4(c)(2) provides:

Service may be effected by any person who is not a party and who is at least 18 years of age. At the request of the plaintiff, however, the court may direct that service be effected by a United States marshal, deputy United States marshal, or other person or officer specially appointed by the court for that purpose. Such an appointment must be made when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 or is authorized to proceed as a seaman under 28 U.S.C. § 1916.

**9.** This code provision was formerly 28 U.S.C. § 1915(c) and was re-codified as part of the Prison Litigation Reform Act § 804(a)(2). Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996). It provides:

The officers of the court shall issue and serve all process, and perform all duties in [*in forma pauperis* ] cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

**10.** The relevant portion of Super. Ct. Civ. R. 54–II is identical to the language in 28 U.S.C. § 1915(d). While we are not bound by the federal courts' interpretation in construing our own rules, we may view those decisions "as persuasive authority in interpreting [the Superior Court rule]." *Dyhouse v. Baylor*, 455 A.2d 900, 901 n. 3 (D.C.1983) (internal quotations and citations omitted); *see also Bazata v. National Ins. Co. of Wash.*, 400 A.2d 313, 314 n. 1 (D.C.1979); *Robinson v. Howard Univ.*, 455 A.2d 1363, 1366 n. 2 (D.C.1983) (internal quotations and citation omitted).

the plaintiff was an inmate proceeding *pro se* and *in forma pauperis*, as in this case, who had formally requested in his complaint that the district court serve process on his behalf. The court nevertheless failed to appoint or direct anyone to serve process. *Id.* at 445, 448. After twice unsuccessfully attempting to secure service on the defendant, the plaintiff petitioned the court to order the clerk to serve process for him, but by that time, the 120–day time period for service stipulated in Fed.R.Civ.P. 4(m) had already expired. *Id.* at 448. The Fifth Circuit, following similar rulings in other circuits, concluded that the district court's failure to comply with its obligations under Fed.R.Civ.P. 4(c)(2) and 28 U.S.C. § 1915(d) after being requested to do so constituted "good cause" sufficient to warrant remand of the case. *See id. Cf. Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir.1987) ("a plaintiff proceeding in forma pauperis is entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, where such failure is through no fault of the litigant"); *Byrd, supra*, 94 F.3d at 220 (Marshal's fail-ure to effect service is automatic good cause under Fed.R.Civ.P. 4); *Antonelli v. Sheahan*, 81 F.3d 1422, 1426 (7th Cir.1996) (same); *Dumaguin, supra*, 307 U.S.App. D.C. at 354, 28 F.3d at 1221 (same). The circumstances are even more compelling here because Herbin made two separate pleas to the court for assistance from the Marshals Service and also indicated his difficulties in serving process in his opposition to Hoeffel's motion to dismiss. Given the trial court's prior denial of his requests for service by the Marshals Service, it would have been pointless for Herbin to continue requesting extensions in order to secure the court's assistance.[11] Moreover, unlike the plaintiff in *Lindsey*, Herbin provided the court with the addresses of all of the parties that had to be served. *See Lindsey, supra*, 101 F.3d at 447. Thus, in view of our determination that the trial court abused its discretion in dismissing Herbin's complaint, we remand for further proceedings.[12]

### III.

For the reasons stated, the trial court's orders dismissing the complaints which are

---

**11.** In most cases, a plaintiff having difficulties effecting service must file either a Rule 4(m) motion setting out the circumstances that warrant an extension of time before the 60–day time limit for service has expired, or a Rule 6(b) motion showing "excusable neglect" for the failure to effect service if the time period has elapsed, in order to avoid a dismissal of the complaint for failure to prosecute. *See generally Bulin v. Stein*, 668 A.2d 810, 815 (D.C.1995). Here, Herbin first filed a motion to extend time before expiration of the 60–day period under Rule 4(m) and, when his complaint subsequently was dismissed *sua sponte* for failure to effect service by the first extension deadline, filed a motion to vacate the dismissal under Rule 41(b). Both times he requested the court's assistance in effecting service. Under these circumstances, it would have been futile for Herbin to file yet a third motion requesting the court's assistance. Had appellant filed either one of these motions in order to avoid or set aside the trial court's eventual dismissal with prejudice, however, the failure of the trial court to appoint someone to serve process on appellant's behalf would have constituted an adequate basis to satisfy even Rule 6(b)'s stricter "excusable neglect" standard. *See Dada v. Children's Nat'l Medical Ctr.*, 715 A.2d 904, 908 (D.C.1998) (describing "excusable neglect" as requiring " '[a] demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for non-compliance within the time specified in the rules.' ")

(quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (2d ed.1987)).

We also note that Rule 41(b)'s requirement that a motion demonstrating good cause for the failure to effect service must be filed within 14 days of the court's *sua sponte* dismissal of the complaint is not applicable to the dismissal with prejudice from which Herbin appeals because the court dismissed the complaint upon appellee's motion. *See* Super. Ct. Civ. R. 41(b).

**12.** Nor was appellant's complaint barred on *res judicata* grounds. This second complaint was based upon a different operative set of facts and involved different parties than the first complaint, as it alleged that Hoeffel had breached her attorney-client duties of confidentiality when she turned over information to Virginia authorities allowing them to locate appellant in order to serve him with a search warrant. In contrast, the first complaint was predicated on a different point in time, *i.e.*, after the prosecution had begun and appellant began preparing for his defense. Therefore, the claim in Herbin's second complaint could not have been presented in the earlier complaint. *Cf. Faulkner v. Government Employees Ins. Co.*, 618 A.2d 181, 183–84 (D.C. 1992) (claim for wrongful cancellation of insurance policy arises from "different set of facts, constituting a separate 'factual nucleus' " compared to suit based on insurance company's failure to pay benefits).

the subject of these appeals are reversed, and the cases are remanded with instruction to reinstate the complaints.

*So ordered.*

SCHWELB, Associate Judge, concurring:

In their supplemental brief filed in response to an order of this court soliciting the parties' positions on the impact of Super. Ct. Civ. R. 54–II, counsel for Ms. Hoeffel have "concede[d] that Herbin's request to have the U.S. Marshals Service (USMS) effect service should have been granted." Ms. Hoeffel's attorneys have not raised the question whether, before ordering USMS to serve the complaint on Ms. Hoeffel, the trial judge was obligated to "screen the case to determine if it is frivolous or malicious [or] fails to state a claim ...." 1 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 4.41, at 4–56.5 (3d ed.1999) (discussing procedure under related federal statute). Counsel likewise have not argued that Herbin will ultimately be obliged to compensate USMS from his prison income. *Id.* § 4.40, at 4–54. These issues not having been raised, we cannot and do not decide them.[1]

With this understanding, I join the judgment and opinion of the court.

---

1. We are not here presented, for example, with a frivolous complaint against a large number of defendants, accompanied by a demand that all of these defendants be served at taxpayer expense.